

*Ilana Haramati*
Partner
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

January 20, 2023

**VIA ECF**

Hon. Jennifer H. Rearden
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007

    Re:    *United States v. Handler, et al.*, 23-cr-004 (JHR)

Dear Judge Rearden:

    We represent defendant Ben Werczberger in the above-referenced case. We write on behalf of Mr. Werczberger and defendants Martin Handler, Menachem Lieberman, and Isidore Handler in further support of the Rule 41(g) motion to return the cell phones seized from them at the time of the arrest. *See* ECF Doc. 22.

    **A.**    **The Government Has Not Proffered Probable Cause for Its Initial Seizure of the Phones**

    As is readily apparent from the briefing and oral argument to date, the government has proffered no lawful basis for the seizure of the phones. Absent a specific exception, the Fourth Amendment requires the government to obtain a warrant in order to seize personal property. As the Supreme Court has explained, "In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). While the government asserts that the seizure was lawful simply because the phones were taken "at the time of the arrest," Gov. Opp., ECF Doc. 28 at 2, the mere timing of the seizure does not bring it within the "search-incident-to-arrest" exception to the warrant requirement. Indeed, unlike in *Riley* and *Diaz*, in which the defendants were arrested in a car, *Riley v. California*, 573 U.S. 373 (2014), and in a public stairwell, *United States v. Diaz*, 854 F.3d 197 (2d Cir. 2017), here the defendants were arrested in their homes. Accordingly, seizure of the phones cannot be justified by the twin policies animating the "search-incident-to-arrest" doctrine, namely, "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Arizona v. Gant*, 556 U.S. 332, 339 (2009).

    Indeed, the government's own citations make clear that seizure of phones from an arrestee's home is typically analyzed under the "plain view" doctrine. *See, e.g., United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017) (items in plain view can be seized only if the object's

"incriminating character is immediately apparent") (quotation marks and citations omitted); *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (items in plain view can be seized only if the object's "incriminating character is immediately apparent"). Recognizing that the "presence alone of a cell phone, or even several cell phones, in a home is not inherently incriminating," the Second Circuit has instructed that "[s]eizure of everyday objects in plain view is justified where the officers have probable cause to believe that the objects contain or constitute evidence." *United States v. Babilonia*, 854 F.3d at 163, 180 (2d Cir. 2017); *see also United States v. Delva*, 135 F. Supp. 3d 269, 276 (S.D.N.Y. 2014) (under plain view doctrine, "[t]here must be a nexus between the item seized and the criminal conduct").

Here the government has made no such showing. In fact, it refused at the presentment to detail the specific grounds for probable cause, repeating only the mantra that it had probable cause for the seizure without more. *See* 1/11/23 Presentment Tr. 20:6-8 ("the law enforcement agents our position is had probable cause to seize the phone when they did"). Even now, after a week has elapsed since the seizures, the government has claimed in its letter only that (i) the "cellphones were used by each of the respective defendants" and (ii) that the cellphones "contained communications reflecting criminal activity." Gov. Opp., ECF Doc. 28 at 2. This, of course, falls short of establishing probable cause, which is "not a talismanic phrase that can be waved like a wand to justify the seizure of any property without a warrant." *Harrell v. City of New York*, 138 F. Supp. 3d 479, 491 (S.D.N.Y. 2015). Indeed, in *Babilonia*, cited by the government to support its seizure of defendants' cell phones, the seizure of phones was sanctioned only because agents conducting the seizure had evidence that the defendant had engaged in murder-for-hire conspiracies using multiple cell phones, and that the defendant's narcotic-related activity had been captured on wiretaps. *Babilonia*, 854 F.3d at 180; *see also* Gov. Opp. ECF Doc. 28 at 2. By contrast, here the government has not proffered any evidence that—at the time of the seizure—it had specific reason to believe that evidence of criminal activity would be found on the seized devices.

      **B.**      **The Government's Delay in Obtaining a Search Warrant Renders Any Subsequent Search Impermissible**

In addition to the constitutional infirmities involving the initial seizure of the four phones at issue here, the government's actions post-seizure created more constitutional harm. While the timeline of events here is clear, the reasons for the government's delay in seeking search warrants for the phones remain a mystery, and at the very least, require an evidentiary hearing to evaluate properly.

First, the timeline of events indicates an eight-day delay in obtaining search warrants for the four mobile devices seized at the time of defendants' arrest. Four defendants in this case were arrested in the early morning hours of January 11, 2023. While specific facts surrounding the seizure of the phones have not been developed yet (as no facts were proffered by the government and no probable cause showing made to justify the initial seizure), the government indeed seized four mobile phones, one each from the following defendants: Martin Handler, Menachem Lieberman, Isidore Handler, and Ben Werczberger. Subsequently, at the time of defendants' presentment before Magistrate Judge Lehrburger later that day, the government indicated "the law

enforcement agents [ ] had probable cause to seize the phone[s] when they did and we are, plan to shortly obtain [ ] search warrant[s] to search [the] contents." 1/11/23 Presentment Tr. at 20. Judge Lehrburger then stated that the government should promptly seek a warrant, stating that the government should return the phones "within 24 hours if a warrant hasn't issued by that time." *Id.* at 21. As the argument about the return of the phones continued, Judge Lehrburger further expressly stated: "I'm not going to prevent the government from issuing a warrant. . . . Okay, and obviously it may be in the government's interest to act sooner rather than later, but I'm not going to set an artificial deadline on it, I'll let it play out as it should going forward." *Id.,* at 29. Although the government initially represented that it could obtain a warrant shortly, it did not do so. It waited a week until the defendants jointly filed a Rule 41(g) motion for the return of the phones with this Court on January 18, 2023. And then, only after the arraignment of the defendants yesterday, the government indicated by letter to the Court late last evening, that it now had obtained search warrants for the phones. *See* ECF Doc. 33.

The delay of eight days between seizure and search warrant application was not only unjustified, but flagrantly disregarded Judge Lehrburger's admonitions and directive of obtaining warrants within 24 hours, otherwise ordering the government to return the phones. No warrants were sought within the 24-hour deadline post-arrest and seizure, and no reason was offered for the continued delay of eight days before the government finally applied for the constitutionally-required warrants. Incredibly, based on representations made yesterday in Court, the government did not even seek to obtain warrants until ***after*** the defendants filed their Rule 41(g) letter motions. This delay is unjustified, unreasonable and, by itself, warrants suppression pursuant to the four-factor test set forth in *United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020).

The Second Circuit held in *Smith* that a 31-day delay was unreasonable and ordered suppression. *Id.* at 202. The Court created a four-factor test to determine whether delay requires suppression:

> [T]he following four factors are generally relevant to whether the police have waited an unreasonable amount of time before seeking a search warrant: (1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the seized item, and (4) the strength of the state's justification for the delay.

*Id.* at 206. The *Smith* Court explained that it is common for law enforcement to temporarily seize a device if probable cause existed. *Id.* at 202. However, it also noted that "the Fourth Amendment requires that they act with diligence to apply for a search warrant." *Id.* Seizures based upon probable cause will become unconstitutional "'if police act with unreasonable delay in securing a warrant.'" *Id.* (quoting *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)).

Here, while the delay was shorter than the one in *Smith,* the government was on actual notice—on the day of seizures—that the defendants had a substantial property interest in their phones and had expressly invoked, in open court, their constitutional right not to have their phones seized and searched without probable cause and a prompt warrant.

Importantly, the 31-day delay in *Smith* is not the threshold for constitutional infirmity. As the Second Circuit explained there:

> If the police have seized a person's property for the purpose of applying for a warrant to seize its contents, it is reasonable to expect that they will not ordinarily delay a month or more before seeking a search warrant. After all, if the police have probable cause to seize an item in the first place, there is little reason to suppose why they cannot promptly articulate that probable cause in the form of an application to a judge for a search warrant.

*Id.* at 206-07.

The *Smith* court also identified circumstances where much shorter delays could be found constitutionally unreasonable. *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (discussing how 11 days might constitute unreasonable delay though not under facts there); *see also United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009) (holding 21-day delay unreasonable under the circumstances); *United States v. Dass*, 849 F.2d 414, 415–16 (9th Cir. 1988) (finding unreasonable delays of between seven to 23 days to seek search warrants for seized packages)). The Second Circuit observed in *Martin*: "[i]n some circumstances eleven days might well constitute an unreasonable delay," and "we would normally expect police officers to secure a search warrant in ***considerably less time*** than" eleven days. *Martin,* 157 F.3d at 54 (emphasis added). The circumstances presented here provide no reason for the more than one-week delay **when the government was advised by a magistrate judge to obtain a warrant within 24 hours.** Indeed, the government's delay was particularly perplexing as they had obtained search warrants for other aspects of the defendants' personal premises and property.

As to the second *Smith* factor, most of the defendants' mobile phones were "smartphones," and important to defendants' daily life. The fact that these were primarily "smartphones" is "vital," according to *Smith*, given the "fundamental distinction between one's ordinary personal effects and one's personal electronic devices." *Smith*, 967 F.3d at 207 (citing *Riley v. California,* 573 U.S. 373 (2014)). Although the government had its own law enforcement interest in the defendants' smartphones, that interest became more attenuated as the delay grew longer. *Id.* at 209. As *Smith* instructs, the time needed to prepare warrant affidavits was minimal, especially given its expected similarity to the affidavit in support of search warrants executed on the same day of defendants' arrest on the offices of some of the target businesses to the charged offense conduct. Likely, the entire affidavit might have been prepared timely, on the date of defendants' arrest, but the government did not present it to the authorizing court until eight days passed. No justification has yet been given for this unreasonable and unnecessary delay.

Pursuant to *Smith*, the government's unexplained eight-day delay was inexcusable and unreasonable, independently warranting immediate return of the property, or prompting a need for immediate suppression motions.

### C. The Court Should Hold an Evidentiary Hearing Pursuant to Rule 41(g)

To resolve these issues, the Court should—as contemplated by Rule 41(g)—conduct an evidentiary hearing. *See* Fed. R. Crim. P. 41(g) ("The court must receive evidence on any factual issue necessary to decide the motion"). There is currently nothing in the record about the precise circumstances of how the phones were seized; what specific facts the government knew about the defendants' use of phones at the time of the seizure; and what reasons exist, if any, for the government's failure to obtain a warrant for the phones prior to the arrest, or immediately thereafter.

While the government has urged resolution of these issues after the searches have occurred in the context of a suppression motion, the fact that the government has now obtained warrants to search the phone only begs the question of why search *and* seizure warrants were not obtained prior to the arrest, or within 24 hours as urged by the Magistrate Judge.

Although there was plainly no risk that the seized phones would be "destroy[ed] or remov[ed,]" *United States v. United States Dist. Court*, 407 U.S. 297, 321 (1972), the concern that underlies the institutional preference for *ex parte* applications, the government chose to proceed without providing notice to the defense. In these circumstances, it should be precluded from any later reliance on the good faith doctrine, *Leon*, since any defects in the warrant application or the face of the warrant could have been litigated *ex ante*, but the government chose not to do so. In any event, with the warrant now in hand, there is no reason why it should not be directed to immediately provide the warrants, as well as the applications, to the defense.

Respectfully Submitted,

MEISTER SEELIG & FEIN LLP

_____/s/ IH_____

Henry E. Mazurek
Ilana Haramati

*Counsel for Defendant Ben Werczberger*

cc: Counsel of Record (*via ECF*)